## PICKFORD *v.* HUDSON.

MALICIOUS PROSECUTION; DIRECTION OF VERDICT; MISCONDUCT OF COUNSEL; PREJUDICIAL ERROR.

1. Where in an action for malicious prosecution it appears that the plaintiff, charged on the complaint of the defendant with conspiracy to

blackmail, was given a hearing in the police court; that at the suggestion of the district attorney, and because of the insufficiency of the original complaint, the defendant swore out a new complaint upon which the action was based; that, with the consent of the plaintiff, the evidence taken at the hearing was considered as applicable to the new complaint, and thereupon the court bound over the plaintiff for the action of the grand jury which found an indictment which was afterwards *nolle prossed*,—it is error for the trial court to refuse an instruction for the defendant that if the defendant, after hearing the evidence against the plaintiff at the hearing, and then, acting upon the instructions of the district attorney, made the new complaint, believing the charge to be true, then their verdict must be for the defendant.

2. While counsel are allowed in argument to the jury wide latitude in drawing deductions from the evidence, it is wholly improper for them to discuss collateral matters tending to discredit a witness, in such manner as to prejudice the rights of one of the parties in the eyes of the jury.

3. In an action for malicious prosecution, where the counsel for the plaintiff in his argument to the jury commented upon the defendant's connection with a crime for which he had been indicted, but from the charge of committing which he had been released by the prosecuting officer entering a *nolle prosequi*, and the trial court overruled plaintiff's objection to such comment, with the remark that it was proper retort to the argument of defendant's counsel, it was *held* that the action of the trial court was error prejudicial to the defendant. (Citing *Washington & G. R. Co.* v. *Dashiell*, 7 App. D. C. 507, and *Washington & G. R. Co.* v. *Patterson*, 9 App. D. C. 423.)

No. 1927.  Submitted December 4, 1908.  Decided February 2, 1909.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for malicious prosecution.                          *Reversed.*

The COURT in the opinion stated the facts as follows:

This is a suit brought by appellee, James L. Hudson, also known as James Hudson, plaintiff below, to recover damages against the appellant, Thomas H. Pickford, for malicious prosecution.  It appears that defendant Pickford and one John H. Walter owned a house located at Four Corners, Maryland, which

was insured for $27,000, with eight insurance companies, on policies averaging about $2,500 each. The house was destroyed by fire, and trouble ensued between the insurance companies and the defendant and Walter, as a result of which suits were brought against the respective companies. Before the suits came to trial, a settlement was effected whereby the insurance companies paid 75 per cent of the total amount for which the building was insured. On March 28, 1901, the defendant Pickford and others were indicted in Montgomery county, Maryland, for the burning of the house; the only witness whose name appeared on the indictment was that of the plaintiff, Hudson. While this indictment was pending, one Hopp undertook to effect negotiations between the plaintiff and defendant whereby, for a money consideration to be paid by defendant, the plaintiff was not to appear against him in the criminal prosecution.

At the time the transactions here occurred, the defendant was conducting a store in this city. At no time while Hopp was carrying on these negotiations did the plaintiff and defendant meet. There is a conflict in the evidence as to whether or not the negotiations were first opened at the instance of Hopp, or on the suggestion of defendant. It does appear, however, that shortly thereafter the defendant consulted his attorney as to what course he had better pursue, and was advised to lay the matter before the United States district attorney. On consultation with the district attorney, two detectives were detailed to investigate the case, and the defendant was instructed to erect a screen in his store behind which the detectives could conceal themselves, and hear any conversation that might take place between the defendant and Hopp, or any other one, in relation to the payment of money by defendant to suppress the evidence of plaintiff in the criminal proceedings. Considerable negotiation was had, and an arrangement was finally arrived at between Hopp and the defendant whereby the defendant was to pay, as a consideration for the suppression of the evidence by plaintiff, the sum of $11,000. In futherance of the arrangement, and under the advice of the detectives, the defendant paid to Hopp the sum of $200 in cash. The payment was made in

currency that had been previously marked in the presence of the detectives. A note for $3,000, payable in thirty days, was also given to Hopp and a receipt for $250 in settlement of a claim that Hopp owed to defendant. The balance of the $11,000 was subsequently to be paid in cash by defendant to Hopp. When Hopp left defendant's place of business at the close of this transaction, the detectives followed him to his restaurant, and on entering found the plaintiff, Hopp, and one other person present. Hopp was at his desk, and plaintiff was sitting some distance away. The detectives arrested the plaintiff and Hopp. They were taken to the police station, and defendant was notified of their arrest.

On April 3, 1901, defendant swore to a complaint charging plaintiff and Hopp with conspiracy to blackmail him out of the sum of $11,000. Upon this complaint a warrant was issued, under which Hopp and plaintiff were detained in jail awaiting a hearing. On the 4th and 5th of April a hearing was had before the magistrate. After the witnesses had been examined and a large amount of evidence adduced, the question of the sufficiency of the warrant to charge the offense for which plaintiff and Hopp were held was suggested. It was admitted by the assistant district attorney in charge of the prosecution, that the warrant was, in all probability, insufficient, and upon his advice defendant swore to another complaint on April 5th. This complaint was made, and the warrant issued thereon, upon the understanding and agreement between counsel for the respective parties that the evidence theretofore taken in pursuance of the complaint of April 3d should be considered as applicable to the complaint of April 5th. Upon the conclusion of the case, plaintiff and Hopp were bound over to await the action of the grand jury. They were thereafter indicted by the grand jury, and subsequently a *nolle prosequi* was directed by the United States district attorney. It also appears that, subsequent to this, the indictment charging the defendant with arson was also *nolle prossed* by the district attorney of Montgomery county, Maryland.

In this case, the action for damages is based solely upon the

complaint sworn to by defendant on the 5th day of April, 1901. On trial a verdict was returned in favor of the plaintiff for $5,000. From the judgment entered thereon, the case comes here on appeal.

*Mr. Samuel Maddox* and *Mr. H. Prescott Gatley* for the appellant.

*Mr. Andrew Lipscomb, Mr. F. Edward Mitchell,* and *Mr. Wm. M. Ellison* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

We think this appeal can be disposed of without a consideration of each of the numerous errors assigned. Our attention has been especially called to one assignment, relating to the refusal of the court to give the following instruction to the jury, when requested on behalf of defendant: "If the jury believe from the evidence that the defendant was present in the police court on the 4th and 5th of April, 1901, when the case of the United States against one Ferdinand Hopp and the plaintiff, James Hudson, was being tried, and heard all of the testimony of the several witnesses then produced and examined, and then, acting at the request and under the instructions of the assistant United States attorney who had charge of the prosecution of said case, made the affidavit of complaint dated the 5th day of April, 1901, offered in evidence, believing the charge therein made to be true, then their verdict must be for the defendant."

The evidence adduced at the trial of this cause clearly discloses that the defendant, early in the negotiations between himself and Hopp, sought the advice of the district attorney, and acted under the direction of that officer and the detectives detailed to work on the case. It also appears that the affidavit of complaint of April 5th, the one upon which this suit must stand or fall, because the only one referred to in the declaration, was sworn to at the suggestion of the district attorney, after evidence had been taken in the case against the plaintiff and Hopp for

upwards of two days. Of course, defendant cannot avail himself of having heard this evidence, or of this official supervision and advice, to justify his conduct, if he acted in bad faith and concealed material information advantageous to the accused or essential to establish probable cause.

The presence of the defendant at the preliminary examination of plaintiff and Hopp, and the advice of the district attorney, are important considerations in ascertaining defendant's liability. It must be remembered that the evidence taken at the hearing was, by stipulation of attorneys, made to apply to the complaint of April 5th. It was upon this evidence that the plaintiff and Hopp were bound over to await the action of the grand jury. It is well settled that "a judgment of a magistrate finding that there was probable cause for believing plaintiff guilty, and binding him over to await the action of the grand jury, constitutes prima facie evidence of probable cause." *Ambs* v. *Atchison, T. & S. F. R. Co.* 114 Fed. 317. Hence, where a person making a criminal complaint in good faith produces evidence sufficient to warrant the magistrate in holding the person charged to await the action of the grand jury, the complaining witness has discharged the obligation upon him of establishing probable cause.

We are here confronted with this situation: Defendant had before him, at the time of making the complaint of April 5th, the evidence of the several witnesses upon which probable cause was found to exist by the committing magistrate. With his own knowledge of the facts, and the additional knowledge gained from hearing the testimony of the witnesses, together with the caution displayed in seeking the counsel and advice of the district attorney, defendant swore out the complaint. If he acted in good faith, and did not secure the finding of probable cause by the magistrate through deception and misrepresentation, he cannot be held liable for malicious prosecution. In other words, if he believed the statements made in the complaint of April 5th to be true, based upon his own knowledge of the facts and the evidence disclosed at the hearing, or upon the evidence alone, he cannot be held liable in the present case. He was not required,

in making the complaint, to depend upon facts within his own knowledge. He was justified in relying exclusively upon the facts disclosed at the hearing, so long as he suppressed nothing within his knowledge advantageous to the accused. These were sufficient to enable him, with the assistance of the district attorney, to intelligently make the complaint in question. The whole question of defendant's liability in the present case revolves around the point aimed at in the instruction here under consideration. If he heard the evidence at the preliminary examination, which, of itself, in the opinion of the committing magistrate, was sufficient to establish probable cause, and, on the strength of it, with advice of the district attorney, made the complaint, believing the facts therein contained to be true, he is to be commended, and not condemned.

Where a citizen acts in good faith in assisting the officers of the law to apprehend and bring to the bar of justice those guilty of crime, or against whom probable cause exists of the commission of crime, such action is to be commended, and not condemned. Hence, where a state of facts exists, such as is here disclosed, a defendant, before being mulcted in damages, is entitled to have all his rights protected and safeguarded before the jury by clear and definite instructions as to the law applicable to the case as made out by the evidence.

It is insisted by counsel for plaintiff that the instruction was properly refused because it did not caution the jury that they must believe that the defendant disclosed all the facts within his knowledge material to the case, before they could find that he acted in good faith and could justify his action on the advice of the district attorney. This was not necessary. Having heard the evidence upon which the committing magistrate found probable cause, he was not required to make any statement to the district attorney, so long as he honestly believed the facts set forth in the complaint to be true. The establishment of probable cause was all that was necessary to justify his action, if the complaint was made in good faith. When the complaint was made, probable cause had already been established by the evidence. The presumption is that defendant acted in good

faith. The law presumes that every man is honest and truthful. The law presumes that every citizen is law abiding, that he lives in the peace and dignity of the state, and that he will not lie. The instruction here offered contains, in substance, all that it is insisted by counsel it should contain. It expressly charges the jury that the defendant can only claim exoneration by reason of his presence at the taking of the evidence and the advice of the district attorney, if he believed the charge made in the affidavit of complaint to be true. An honest belief in the truth of the charge contained in the complaint excludes either a maliciously false intent on the part of defendant in making the complaint, or a suppression of material facts advantageous to the accused. The charge given by the court did not instruct the jury on the effect of defendant's having made the complaint on the advice of the district attorney after hearing the evidence at the preliminary examination of plaintiff and Hopp. Defendant was entitled to have the jury instructed on this point, and it was error for the court to refuse to give the instruction when requested.

We deem it important to consider briefly another assignment of error. It appears that counsel for plaintiff, in his closing argument to the jury, used the following language: "You noticed, did you not, gentlemen of the jury, that although Mr. Maddox asked Mr. Hudson, when a witness on the stand, where he got information with regard to the fire at Four Corners, and Hudson said, 'Shaw told me.' Did you also notice that he did not ask Hudson what it was that Shaw told him? He did not dare to do it. Mr. Hudson is here in court, and we will consent that he be recalled for further cross-examination, if counsel for the defendant desire." The record discloses that counsel for defendant objected to this statement on the ground that it was not proper argument, but the court overruled the objection, stating that it was proper retort to the argument of *plaintiff's* counsel. There is manifestly a mistake in the transcript of the record or in the bill of exceptions as the court must have referred to the remark as proper retort to the argument of *defendant's* counsel. This mistake, however, is not material.

If the court referred to improper remarks by defendant's counsel, two wrongs never make a right, and two errors cannot correct a defective record. If defendant's counsel had made improper remarks in his argument, it was the duty of the court to withdraw them from the jury, with an instruction to disregard them, instead of licensing plaintiff's counsel to indulge in similar unprofessional conduct. The fatal error committed here consisted not only in the fact that the language used was purely prejudicial, but that it went to the jury with the approval of the court. While we recognize that counsel are allowed wide latitude in drawing deductions from the evidence, it is wholly improper to discuss collateral matters tending to discredit a witness, in such a manner as to prejudice the rights of a party litigant in the eyes of the jury.

At the time of the trial in the present case, the defendant had been discharged from the indictment charging him with the crime of arson in the State of Maryland. The remarks indulged in tended to impress the fact of his former indictment upon the attention of the jury in a most damaging way, and in a manner not warranted by the evidence. It was within the rightful discretion of counsel for defendant to cross-examine plaintiff in any manner they thought judicious, as long as they kept within proper bounds. They were not required to pursue any line of interrogation further than they deemed wise, and it was wholly improper for counsel for plaintiff to speculate as to what would have been disclosed by further inquiry. This is a species of professional conduct generally condemned by courts of review. This court, speaking through Chief Justice Alvey in *Washington & G. R. Co.* v. *Dashiell*, 7 App. D. C. 507, made the following pertinent observation: "That great prejudice and wrong is frequently effected by the improper and unwarrantable comments of counsel, made without the support of the evidence, and beyond and outside of the legitimate scope of the subject of inquiry, is beyond question; and in recent times the courts of the country have frequently been called upon to counteract and relieve against such undue prejudice and its effects, by silencing counsel and setting aside verdicts. Counsel have no privilege.

to comment upon matter beyond the limits of the evidence before the jury for their consideration, with a view to creating prejudice and inducing a finding not justified by the evidence. It is·upon the facts given in evidence to the jury, and those alone, that the verdict must depend for its support and validity, without reference to any extraneous matter that may be suggested by counsel." This rule was affirmed in *Washington & G. R. Co.* v. *Patterson,* 9 App. D. C. 423.

In *Hall* v. *United States,* 150 U. S. 76, 37 L. ed. 1003, 14 Sup. Ct. Rep. 22, the court said: "The attempt of the prosecuting officer of the United States to induce the jury to assume, without any evidence thereof, the defendant's guilt of a crime of which he had been judicially acquitted, as a ground for convicting him of a distinct and independent crime for which he was being tried, was a breach of professional and official duty, which, upon the defendant's protest, should have been rebuked by the court, and the jury directed to allow it no weight. The presiding judge, by declining to interpose, notwithstanding the defendant's protest against this course of argument, gave the jury to understand that they might properly and lawfully be influenced by it, and thereby committed a grave error, manifestly tending to prejudice the defendant with the jury, and which, therefore, was the proper subject of exception, and, having been duly excepted to, entitles him to a new trial." The case last cited is clearly in point. There is no distinction between comment touching a crime of which a defendant has been acquitted, and one for which a defendant has been indicted, but from which he has been released by the prosecuting officer entering a *nolle prosequi.* It is not for us to say what effect these remarks might have had on the jury. There is too grave a danger involved in the probable results of such an impression to permit of any speculation on our part as to its effect upon the jury. The probability of injury and injustice is so great as to leave but one safe course for us to pursue, and that is to grant a new trial.

For the errors committed, the judgment is reversed, with costs, and the cause remanded for a new trial.                *Reversed.*